**Entered on Docket**
**December 14, 2010**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**The following constitutes the order of the court. Signed December 10, 2010**

**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SWIFT INSTRUMENTS, INC.,<br><br>Debtor. | Case No. 06-50896 CN<br><br>Chapter 7 |
| CAROL WU, CHAPTER 7 TRUSTEE,<br><br>Plaintiff,<br><br>vs.<br><br>STEPHEN H. SWIFT TRUST; ANNE H. SWIFT; STEPHEN W. SWIFT; SAMUEL H. SWIFT; AND QTIP TRUST #2 OF HUMPHREY H. SWIFT TRUST - 1966 U/I DATED AUGUST 1, 1966,<br><br>Defendants. | Adversary No. 09-5335<br><br>**MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

On October 15, 2010 this Court heard cross motions for summary judgment filed by plaintiff Carol Wu, Chapter 7 trustee ("Wu") and defendants Stephen H. Swift Trust and QTIP Trust #2 of the Humphrey H. Swift Trust - 1966 U/I Dated August 1, 1966 (the "HHS Trust")[1]. Appearances were stated on the record. Wu seeks summary judgment on her first claim for relief, which seeks to subordinate, under Bankruptcy Code § 510(b), the proof of claims filed by the Trusts and defendants

[1] The HHS Trust and the Stephen H. Swift Trust shall collectively be referred to as the "Trusts."



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Stephen W. Swift and Samuel Swift as damages arising from the debtor's purchase of the Swift Instrument, Inc. stock owned by the defendants' predecessors in interest. The Trusts contend in their summary judgment motions that their claims cannot be subordinated under § 510(b) as a matter of law.[2] The HHS Trust's summary judgment motion also seeks to dismiss Wu's second and third claim for relief (which assert claims under Bankruptcy Code §§ 502(d) and 547 against defendants Anne Swift, the HHS Trust, Stephen Swift and Samuel Swift). For the reasons stated below, the court grants the Trusts' motions for summary judgment against Wu's first claim for relief and denies Wu's competing motion for summary judgment against all defendants. The court further grants the HHS Trust's motion for summary judgment against Wu's second claim for relief on the ground that the preference claim is time-barred under Bankruptcy Code § 546. Finally, the court denies the HHS Trust's motion as to Wu's third claim for relief.[3]

## I. UNDISPUTED FACTS

Wu and the Swifts agree that there are no questions of fact regarding Wu's § 510(b) claim for relief, and that this court's sole task is to interpret that code section and apply it to the undisputed facts. The court summarizes these undisputed facts as follows:

Chapter 7 debtor Swift Instruments, Inc. ("Swift Instruments" or the "company") was a corporation founded by relatives of Humphrey H. Swift ("H.H. Swift") and Samuel H. Swift. Both H.H. and Samuel H. Swift owned significant shares of Swift Instruments. To ensure that their stock remained within the control of the Swift family and/or Swift Instruments, H.H. Swift and Samuel H.

---

[2] Defendant Stephen Swift opposed Wu's motion but did not file a separate motion for summary judgment on his proof of claim. Defendant Samuel Swift neither opposed the motion nor filed his own summary judgment motion with regard to his proof of claim. Since the issues with regard to each claim are identical, the court will collectively refer to the defendants as the "Swifts."

[3] This memorandum decision shall constitute the court's findings of fact and conclusions of law.



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 2 of 11

Swift executed a Stock Restriction Agreement in June 1952 which (as amended) required H.H. and Samuel H. Swift (and/or their executors or trustees) to sell their Swift Instruments stock to the company upon certain events, including their demise. The Stock Restriction Agreement required the company to purchase the stock at a value determined by "the Total Stockholders' Equity per share of stock outstanding as determined in accordance with generally accepted accounting principles consistently applied and as set forth in the company's audited balance sheet . . . ."

H.H. Swift died in January 2002, and ownership of his Swift Instruments stock passed to his probate estate. Under the terms of the Stock Restriction Agreement, his probate estate sold his shares to the company for $3,063,000.00, of which approximately one-third was paid immediately. The company issued two promissory notes for the $2,012,749.89 balance, payable to H.H. Swift's estate. These notes, dated June 24, 2002 and March 13, 2003, specifically stated that they were issued "as partial payment of the purchase price arising from the [company's] repurchase" of H.H. Swift's company stock. Under the terms of H.H. Swift's will, these notes were assigned to the HHS Trust. The notes were then consolidated into a single promissory note, dated April 15, 2003. The consolidated note required ten annual payments, which were due in June of each year. Defendant HHS Trust did not provide any consideration for the assignment.

Swift Instruments promptly defaulted on the April 2003 note. To accommodate the company, the HHS Trust and the company executed a restated note in January 2004. The January 2004 note altered the payment dates, rolled the missed June 2003 payment into the remaining payments, and added certain "Events of Default" to the note terms. [4] The company made its restated note payments through September 30, 2005. Some of these payments were made within a year of the company's May 24, 2006 bankruptcy filing.

---

[4] The HHS Trust also received a warrant to purchase 1,700 shares of the company's non-voting stock at $1 per share. The HHS Trust never exercised this warrant.



Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 3 of 11

The HHS Trust timely filed its proof of claim in July 2006. The HHS Trust asserts a general, unsecured non-priority claim for $2,265,095.53, which represents the unpaid balance of the restated note.

**B. The SHS Trust Note**

Samuel H. Swift died in 1997. Pursuant to the terms of the Stock Restriction Agreement, the company purchased his Swift Instruments stock. The company purchased 12,600 shares from his probate estate for $1,394,190, of which $1,278,000.00 was financed through a series of promissory notes. Pursuant to Samuel H. Swift's testamentary wishes, his executor assigned the note to defendant SHS Trust. The SHS Trust did not provide any consideration for this assignment. The SHS Trust timely filed its proof of claim, in which it asserted an unsecured non-priority claim for $80,336.63. This amount represents the unpaid balance of the company's promissory note.

**C. Stephen and Samuel Swift Claims.**

The company's 1997 purchase of Samuel H. Swift's stock included shares that he had placed in Divorce Settlement Trusts created for the benefit of defendants Stephen and Samuel Swift. To pay for these shares, the company issued two additional promissory notes, each in the amount of $226,407.09, payable respectively to Stephen and Samuel Swift. The notes were amended in December 2000 and restructured in January 2004 to alter the payment schedules and to add accrued interest to the principal note balances.[5] The company made all note payments through September 30, 2005.

In September 2006 defendant Stephen Swift timely filed his proof of claim asserting an

---

[5] The company also issued stock warrants to the Swifts as part of the note restructuring, which were never exercised.



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 4 of 11

unsecured non-priority claim of $234,746.90. The claim represents the unpaid note balance. Samuel Swift also timely filed a proof of claim in which he asserted an unsecured non-priority claim of $226,407.09. This amount represented his unpaid note balance.

All parties agree that defendants HHS Trust, SSH Trust, Samuel Swift and Steven Swift were never shareholders, officers or directors of the company.

Wu filed the underlying adversary proceeding on December 16, 2009 against the Swifts. Wu filed her complaint more than two years after the company filed its Chapter 11 case, and more than one year after the case was converted to Chapter 7.

## II. LEGAL ANALYSIS

Federal Rule of Bankruptcy Procedure 7026(c) provides that parties are entitled to summary judgment when there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Since there are no factual issues, this court may resolve these motions for summary judgment on Wu's first claim for relief as a matter of law. There are also no genuine issues of material fact regarding Wu's second claim for relief.

Bankruptcy Code § 510(b) provides for mandatory subordination of all damages claims arising from the purchase or sale of a debtor's security.

> For purposes of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or an affiliate of the debtor, for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interest that are senior to or equal to the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority of common stock.

There is no dispute that the company's purchases under the Stock Repurchase Agreement were purchases of the company's securities. Moreover, defendants' breach of contract claims are potentially subject to § 510(b) subordination. See *In re Betacom of Phoenix*, 240 F.3d 823, 929 (9th



Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 5 of 11

Cir. 2001) (mandatory subordination not limited to securities fraud claims). Nor is § 510(b) subordination limited to claims asserted by those who are or were shareholders. Ibid. Rather, the critical question before this court is whether the Swifts' breach of contract damages "arise" from the company's stock purchase for purposes of § 510(b).

The Ninth Circuit has stated that § 510(b) is to be interpreted broadly to give effect to the statute's remedial goals. See, e.g., *In re American Wagering, Inc.*, 493 F.3d 1067, 1072 (9th Cir. 2007). "Section 510(b) serves to effectuate one of the general principles of corporate and bankruptcy law: that creditors are entitled to be paid ahead of shareholders in the distribution of corporate assets. The principles behind corporate and bankruptcy laws generally do not favor shifting the risk of loss from shareholders to creditors, even if the shareholders are blameless. One of the primary purposes of § 510(b), therefore, is to prevent disappointed shareholders, sometimes the victims of corporate fraud, from recouping their investment in parity with unsecured creditors." *In re American Wagering, Inc.*, 493 F.3d at 1071-72. The Ninth Circuit has identified the two main reasons for § 510(b) claim subordination: the dissimilar risk and return expectations of creditors and shareholders, and the reliance of creditors on the equity cushion provided by shareholder investment. Id. at 1072. Promissory note claims sufficiently "linked" to securities transactions may be subject to § 510(b) subordination. See *In re Betacon of Phoenix, Inc.*, 240 F.3d 823, 832 (9th Cir. 2001).

While many courts have generically stated that the phrase "arising from" implies that "there must be some nexus or causal relationship between the claim and the [purchase/sale] of the security,"[6] this language does not, as Wu suggests, require this court to apply a "but for" analysis and subordinate the Swift promissory note claims.[7] Instead, this court must determine whether subordinating the Swifts' claims satisfies the purposes of the code section. See, e.g., In re JTS

---

[6] See In re Telegroup, 281 F.3d 133, 138 (3rd Cir. 2002).

[7] No one contests that the Swifts' notes result from the Stock Restriction Agreement purchases.



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 6 of 11

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Corporation, 305 B.R. 529, 545 (Bankr. N.D. Cal. 2003) (The case law within the Ninth Circuit "does not clearly define the outer reaches of mandatory subordination. Instead, the courts must assess whether the policies and goals underlying the statute support subordination in the given circumstances before them."). The fundamental purpose of § 510(b) is to prevent disappointed shareholders or would-be shareholders from recovering their investment loss by using fraud and other claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding. See In re Telgroup 281 F.3d at 142. This court refers the parties to the Southern District of New York's thorough analysis of § 510(b) in In re Enron Corp, 341 B.R. 141 (Bankr. S.D.N.Y. 2006). The Enron court rejected Wu's argument that a breach of contract claim, which is directly related to a securities sale, therefore "arises from" that sale. Instead, the Enron court noted that the policy considerations at issue in § 510(b) are "aimed at equity interests attempting to elevate their claim. . . ." Id. at 156, fn. 12. The Enron court noted that while "the statutory language refers only to 'damages,' the courts reasonably read this to mean 'damages flowing from changes in the debtor's share price.' Where the damages are connected to the declining value of the debtor's stock, the courts are inclined to read section 510(b) broadly. . . . Conversely . . . where the claim is for a fixed amount and does not arise in parallel with the fortunes of the share price, the courts are inclined to read section 510(b) narrowly." Id. at 157.

While the Enron court noted that the typical, subordinated claim is between securities issuer and holder, it acknowledged that breach of contract claims may be subordinated under § 510(b). See, e.g., In re Betacom of Phoenix, Inc., 240 F.3d 823 (9th Cir. 2001). Significantly, however, those courts that have held that contract claims may be subordinated under §510(b) state that they "were concerned with claims that tried to recharacterize or restate what would otherwise be subordinated securities claims." In re American Wagering, Inc., 493 F.3d at 1067, 1072.

This court has not found any decision within the Ninth Circuit which has held that a bankruptcy court may subordinate a promissory note claim under § 510(b) because the debt was generated by a stock sale. All of the analogous case law outside of the Ninth Circuit has held to the


Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 7 of 11

contrary. See In re Marketxt Holdings Corp., 361 B.R. 369, 389 (Bankr. S.D.N.Y. 2007) (collecting cases).

The court finds that the undisputed facts demonstrate that the Swifts are seeking to enforce their debt instruments, and are not asserting claims which rely on or are tied to the value of the company's stock. The Swifts (and their predecessors in interest) removed themselves as equity holders when the company issued the promissory notes (which were executed several years before the company filed its bankruptcy petition). These purchases, in turn, were mandated by the Stock Restriction Agreement, which itself was signed in its original form more than 50 years earlier. While this court recognizes that the promissory notes reflect the Swift brothers' recoupment of their investment in the company, the Swifts' risks and returns under the promissory notes are defined by their payment terms: fixed payments with a fixed rate of return. Moreover, during the various negotiations to restate the promissory notes the company and the Swifts treated these claims as creditor claims, and not failed equity investments. Simply, the Swifts' claims are not seeking to recharacterize a securities or equity claim.[8]

In addition, no evidence has been presented that the equity created by H.H.S. Swift and S.H. Swift's stock holdings were relied upon by creditors in deciding whether to extend credit to the company(indeed, given the terms of the Stock Restriction Agreement, the court questions whether any creditor could reasonably rely on the equity "removed" by any of the promissory note payments).[9] Accordingly, the Trusts' motions for summary judgment on Wu's first claim for relief

---

[8] The court acknowledges that its application of § 510(b) may be inconsistent with the bankruptcy appellate panel decision in In re American Wagering. See the BAP's analysis of In re Mobile Tool Int'l, Inc., 306 B.R. 778 (Bankr. D.Del. 2004) at In re American Wagering, Inc.,326 B.R. 449, 456 (Bankr. 9th Cir. 2005). The Ninth Circuit's decision in In re American Wagering, Inc., however, did not include the BAP's analysis of Mobile Tool.

[9] The Enron court questioned "the utility of the equity cushion concept as a rationale for section 510(b) subordination. The concept is clearly useful in understanding the absolute priority rule and the distinction between classes of claim, but it is less useful when applied to any particular claim for the simple reason that it is difficult in a mature and liquid market to link any



Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 8 of 11

is granted, and Wu's motion for summary judgment against the Trusts, Stephen Swift and Samuel Swift is denied.

Wu's second claim for relief asserts preference claims against the HHS Trust, Stephen Swift, Anne Swift and Samuel Swift. The parties agree, however, that Wu did not timely assert these claims under Bankruptcy Code § 546, and Wu has stated her intent to dismiss these claims. Since these claims are time-barred, the Court dismisses Wu's second claim for relief against all parties.

Finally, the court finds that the record is insufficient to grant the HHS Trust's motion for summary judgment on Wu's third claim for relief under Bankruptcy Code § 502(d). Wu may object to the Swifts' proof of claims under § 502(d) despite her inability to seek affirmative relief under §§ 547 and 550, and a material question of fact exists regarding Wu's right to avoid these payments under § 547. The allegedly preferential payments received by the HHS Trust were made beyond ninety days and within a year of the company's bankruptcy filing. Accordingly, Wu must establish that the HHS Trust is an insider under Bankruptcy Code § 101(31). The HHS Trust is not a "per se" insider under this code section, and thus qualifies as an insider only if Wu can establish that it could exercise some control over the company. See In re Enterprise Acquisition Partners, Inc., 319 B.R. 626, 633 (Bankr. 9th Cir. 2004) (Qualification as a non-statutory insider turns on the closeness of the parties and the degree to which the transferee is able to exert control or influence over the debtor so as to make the transfer not an arms-length transaction).

While the evidence indicates that the HHS Trust and the company extensively negotiated the terms of the restated promissory note, the court notes that the company's president was both the daughter of the primary beneficiary of the HHS Trust, and a contingent beneficiary of the HHS Trust (and thus had a significant interest in the note). Accordingly, the court concludes that material

---

particular equity investment to any particular credit extended in reliance thereon." In re Enron, at 341 B.R. at 165-66, fn. 20.



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 9 of 11

questions of fact existed regarding whether the HHS Trust was an insider under Bankruptcy Code § 101(31), and thus whether Wu may avoid the allegedly preferential payments to the HHS Trust.

***** END OF ORDER*****





Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 10 of 11

Adversary No. 09-5335

**COURT SERVICE LIST**

Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004

Melissa Lor
Michael M. Carlson
Schnader, Harrison, Segal and Lewis
One Montgomery St., #2200
San Francisco, Ca 94104

Dennis Gallaudet
67 Range Road
Cumberland, ME 04021-3432

Marcia E. Gerston
McGrane Greenfield LLP
55 S. Market Street, Suite 1500
San Jose, CA 95113

Stephen H. Swift
733 East Costilla Street, Suite A & B
Colorado Springs, CO 90903

Samuel H. Swift
128 East 400 South
Provo, UT 84606





Case: 09-05335 Doc# 62 Filed: 12/10/10 Entered: 12/14/10 09:49:54 Page 11 of 11